IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA CONKLIN, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:05-CV-0141-P |
| v. | § § | |
| SENIOR HOUSING SERVICES, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment, filed December 21, 2005. Plaintiff filed a Response on January 13, 2006, and Defendant filed a Reply on January 24, 2006. After careful consideration of the parties' briefing, the evidence, and the applicable law, Defendant's Motion for Summary Judgment is GRANTED in all respects.

**I.      Factual Background**

This case is an employment discrimination suit brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). Plaintiff Debra Conklin (hereinafter "Plaintiff" or "Conklin"), at the age of 47, was hired by Defendant Senior Housing Services, Inc. (hereinafter "SHS" or "Defendant") in September of 2002. SHS is the owner of Lewisville Estates, a retirement and assisted living community located in Lewisville, Texas. Lewisville Estates is managed by Certus, a management and development company that specializes in senior housing. David Ostlie ("Ostlie"), co-owner of Certus, hired Plaintiff as

Regional Director, with the primary responsibility of managing the day-to-day operations of Lewisville Estates.[1] Plaintiff's compensation package included a salary of $75,000 and on-site room and board at the facility. (*See* Def.'s Mot. Summ. J. at 2-3.)[2]

Sometime around March of 2003, Certus became dissatisfied with Plaintiff's performance and decided to look for a general manager that could assist Conklin in her duties. Defendant believed that Conklin was failing to keep expenses down and was not achieving the expected revenue projections. In April of 2003, Ostlie hired Bill Layer ("Layer") and gave him the title Regional Director. Conklin's title was renamed General Manager/ Executive Director. Layer was 30 years old at the time of his hire. After April, Ostlie states that he saw no improvement in Conklin's management of Lewisville Estates. Rather, Defendant states that conflict developed between Conklin and Layer, and that Conklin often disregarded the instructions of Ostlie, her boss. According to Defendants, Ostlie gradually lost confidence in Conklin and made the decision to terminate her on July 16, 2003. At the time of the termination, Conklin was 48 years of age and Ostlie was 57. Conklin was replaced by Lisa Nelson, a 34 year old female.

Plaintiff disputes the allegations of poor performance, instead asserting that she was improperly terminated because of her age. Plaintiff further contends that Defendant intentionally caused her extreme emotional distress by discharging her because of her age, and thus brings a

---

[1] Plaintiff claims that her duties as a Regional Director also included oversight of "the Garland property." (App. Pl.'s Resp., Aff. at 11.) Defendant states that Lewisville Estates was the only property in Texas managed by Certus at the time of Conklin's hire. However, this inconsistency is not relevant to the present dispute.

[2] All cites to "Def.'s Mot. Summ. J." refer to the Brief in Support of Defendant's Motion for Summary Judgment.

claim for intentional infliction of emotional distress. Plaintiff timely filed a charge of discrimination with the EEOC and thereafter received the requisite right to sue letter. Plaintiff filed suit with this court on January 24, 2005. Defendant now moves for summary judgment on all of Plaintiff's claims.

## II.     Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Id.*  However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a

summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## III.   Analysis

In her complaint, Plaintiff alleges that she was demoted and ultimately terminated because of her age, in violation of the ADEA. (Compl. ¶ 14.) Plaintiff asserts that Ostlie made several comments regarding the age of Layer and that these alleged statements can be considered direct evidence of age discrimination. (Pl.'s Resp. at 8.) The Court disagrees. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (*i.e.*, unlawful discrimination) *without any inferences or presumptions*." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (emphasis original) (citations omitted). Ostlie's remarks, if assumed to be true, do not prove that Conklin was discriminated against because of her age. The remarks would only tend to prove that Ostlie believed Layer was a "young, up-and-coming executive," and that he "looked like a young Baptist preacher." (App. Def.'s Mot. Summ. J. at 196.) The comments are properly characterized as circumstantial evidence because inferences would have to be made in order to connect them to unlawful discrimination.

In employment discrimination cases that lack direct evidence of discriminatory intent, as is typically the case, circumstantial evidence is assembled using the framework laid out in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The *McDonnell Douglas* analysis is equally applied to discrimination claims brought under Title VII and the ADEA. *Id.; see O'Conner v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996).

Under the *McDonnell Douglas* framework, Plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination in order to survive Defendant's Motion for Summary Judgment. The prima facie case, once established, raises a presumption of discrimination which Defendant must rebut by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001). This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Russell*, 235 F.3d at 222.

If the employer carries its burden, the mandatory inference of discrimination created by the prima facie case disappears. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). Under the modified *McDonnell Douglas* standard propounded by the Fifth Circuit, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed motive alternative)." *Rachid v. Jack in the Box*, 376 F.3d 305, 311 (5th Cir. 2004) (citations omitted).

### A.  Demotion

As an initial matter, the Court finds that Plaintiff cannot maintain a claim based on her alleged demotion. Conklin contends that the hiring of Layer and the subsequent renaming of her title from Regional Manager to General Manager/ Executive Director constituted a demotion and that Defendant should be liable for damages under the ADEA. The Fifth Circuit has held that an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Hunt v. Rapides Health Care Sys. LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

Defendants state that the renaming of Conklin's job title did not alter her job duties in any way and that her compensation was not reduced. (App. Def.'s Mot. Summ. J. at 540.) Plaintiff does not dispute these claims. (*Id.* at 19.) In affidavit, she argues that she was demoted but does not explain how the change in title affected her in any substantive way. (App. Pl.'s Resp., Aff. at 11.) There is no evidence before the Court that Conklin's job duties, compensation, or benefits were impacted, thus she cannot be said to have suffered an adverse employment action. As an "[a]dverse employment action is part of the *prima facie* showing in an ADEA case," *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 394 (5th Cir. 2002), Plaintiff cannot maintain a claim based on the alleged demotion.

    B.    **Termination**

To establish a prima facie case of age discrimination for wrongful termination, Plaintiff must show that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age. *Machinchick*, 398 F.3d at 350; *Rachid,* 376 F.3d at 309. Defendant concedes that Plaintiff satisfies elements (1), (3), and (4) in that she was terminated, she was in a protected class, and she was replaced by someone younger. (Def.'s Mot. Summ. J. at 10.) But Defendant argues that Conklin cannot meet the second element of the prima facie case because she was not qualified for the position from which she was terminated. The Fifth Circuit, however, has held that the second element of this prima facie case is met when a plaintiff shows that she meets objective employment qualifications. *Medina*, 238 F.3d at 681-82. Defendant has submitted no evidence that would show Plaintiff failed to meet the objective qualifications of the job, rather,

the fact that she was hired in the first place strongly indicates such requirements were met. The issue of whether she met the subjective qualifications of the position is appropriately handled at later stages of the analysis. Furthermore, in most cases a "*prima facie* case is fairly easily made out." *Florer v. Electronic Data Sys. Corp.*, No. 3:03-CV-1175-H, 2004 WL 1898266, at *4 (N.D. Tex. Aug. 24, 2004) (citing *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991)). Thus, the Court finds that Plaintiff has met the prima facie case and, as a result, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination.

To rebut the presumption of discrimination raised by the prima facie case, Defendant offers multiple reasons for the termination of Plaintiff. Defendant states that Conklin failed to keep expenses down at Lewisville Estates, particularly in the areas of food service costs, food labor costs, assisted living labor costs, and miscellaneous expenses. (App. Def.'s Mot. Summ. J. at 484.) Part of the reason for the increased labor expenses was fraudulent over-billing by a temporary staffing agency which was allegedly not monitored closely by Conklin. (*Id.* at 499-500.) Furthermore, Defendants believed Conklin displayed poor judgment in offering discounts to new residents, which caused decreased revenue at the facility. In addition, Ostlie testifies in deposition that residents would approach him to complain of poor service at the facility and that he had become frustrated by the lack of communication between himself and Conklin. (*Id.* at 479, 492.) Ostlie believed that Plaintiff spent too much time in her on-site apartment instead of interacting with the residents and employees she was charged with supervising. (*Id.* at 536-37.) Ostlie further states that on several occasions Conklin failed to follow instructions in regards to hiring decisions and resolving disputes at the facility. (Def.'s Mot. Summ. J. at 13.)

Distilled to their essence, the reasons articulated by Defendant for the termination are poor performance and insubordination. A termination based on poor performance and insubordination is legitimate and non-discriminatory. *See, e.g., Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997). The Court does not examine the credibility of an employer's reasons at this stage of the analysis. Thus, Defendant has met its burden of production and the onus shifts back to Plaintiff to convince the Court that the reasons articulated by Defendant are pretextual or that age was a motivating factor in the decision to terminate her.

The Court finds that Plaintiff fails to present evidence that would lead a reasonable factfinder to question the legitimacy of Defendant's reasons for termination. Defendant primarily claims that Plaintiff was fired because of poor performance. In response, Plaintiff actually bolsters this legitimate reason. In her affidavit, she admits to variances and costs that were over budget, but claims that these were "uncontrollable items." (App. Pl.'s Resp., Aff. at 17.) Plaintiff submits financial statements that show expenses were consistently over budget and revenues did not meet expectations. (App. Pl.'s Resp., "Attachment #1.") Plaintiff does not dispute that the financial condition of the facility was less than stellar, rather, she gives excuses as to why it was beyond her control and argues that she performed well in her job. But merely disputing Defendant's assessment of her performance does not create a fact issue. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Plaintiff essentially argues that the facility's shortcomings were not her fault and termination based on these reasons is not fair. However, the employment discrimination statutes are not intended to protect against "unfair or unwise business decisions," but against discriminatory decisions. *Nieto v. L & H Packing Co.*, 108 F.3d

621, 624 (5th Cir. 1997) (citation omitted). Plaintiff further states in affidavit that she did not follow instructions in making certain hiring decisions and that certain issues at the facility remained unresolved. (*See* App. Pl.'s Resp. at 14-16.) Once again, this supports the legitimacy of Defendant's belief that she was insubordinate and fails to raise an issue of pretext. As Plaintiff has not offered any evidence to rebut the legitimate reasons given by her employer for the termination, no rational factfinder could find that the employer's actions were a pretext for discrimination.

In addition to not raising an issue of pretext, Plaintiff has submitted little evidence that would suggest age was a motivating factor in the decision to fire her. Much of Plaintiff's summary judgment evidence relates to Plaintiff's purported demotion rather than her ultimate termination. But as stated previously, the Court finds that Conklin was not demoted, as her job duties, compensation, and benefits did not change. At most, the comments allegedly made by Ostlie could be considered circumstantial evidence of discriminatory animus.[3] But the evidence on record strongly suggests that the decision to terminate Conklin was not based on age bias. Significantly, Defendant states that Ostlie both hired and fired Conklin, a claim that Plaintiff does not dispute. The Fifth Circuit has held that this situation "gives rise to an inference of non-discrimination because it is unlikely that a decision maker 'would hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them

---

[3] In deposition testimony, Conklin stated that Ostlie told her that Layer was "a better candidate for the position, that he was a young, up-and-coming executive, that he ... looked like a young Baptist preacher." (App. Def.'s Mot. Summ. J. at 196.) Ostlie denies making such statements; Plaintiff did not include these allegations in her charge filed with the EEOC or her complaint filed with this Court. Plaintiff first mentioned the comments at deposition, two years after the comments were allegedly made. Nevertheless, the Court must assume the truth of the statements for the purposes of this motion. However, the Court ultimately decides that such comments do not raise an issue of pretext or discriminatory motive.

once they are on the job.'" *Nieto*, 108 F.3d at 624 (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). In addition, Ostlie is nine years older Conklin and is therefore in the same protected class as Plaintiff. This further enhances the inference that age discrimination was not a motive behind the termination. *Brown*, 82 F.3d at 658. Viewing the record as a whole, Plaintiff has made no showing that would suggest age was a motivating factor in the decision to terminate her.

## IV.     Intentional Infliction of Emotional Distress

"In Texas, for a plaintiff to prevail on a claim of intentional infliction of emotional distress, [s]he must demonstrate that the defendant acted intentionally or recklessly, that the conduct was extreme and outrageous, and that the conduct caused [her] severe emotional distress." *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 136 (5th Cir. 2004) (citing *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)). "In determining whether alleged conduct is sufficiently outrageous to fall under the ambit of the cause of action, the Texas courts have warned that the conduct must have been 'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). In support of her claim, Plaintiff offers little more than a sentence in her affidavit to describe the circumstances that caused her severe distress. Plaintiff states that the unexpected termination caused embarrassment and humiliation, as well as financial hardship. The facts alleged by Plaintiff are woefully inadequate to state a claim for intentional infliction of emotional distress; nothing is alleged other than the normal disappointments and inconveniences associated with the loss of a job. This falls well short of the stringent showing required by Texas

courts. Therefore, summary judgment is proper and Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## V.     Conclusion

For the reasons stated herein, the Court GRANTS Defendant's Motion for Summary Judgment in all respects.

**IT IS SO ORDERED.**

Signed this 3rd day of February 2006.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE